IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LEANN J. NESSELRODTE,
on behalf of herself and all others
similarly situated

    Plaintiff,

v.                                              Civil Action No. 3:11-CV-92

UNDERGROUND CASINO &
LOUNGE, LLC,

    Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO FACILITATE IDENTIFICATION AND NOTIFICATION OF SIMILARLY SITUATED EMPLOYEES

This matter comes before the Court on Plaintiff Leanne Nesselrodte's *Motion to Facilitate Identification and Notification of Similarly Situated Employees*,[1] filed on June 28, 2012. On July 20, 2012, Defendant filed a Response.[2] On August 7, 2012, the Plaintiff filed a reply to the response,[3] and on August 21, 2012, the Defendants filed another response in opposition to the motion.[4] Finally, on August 22, 2012, the Plaintiff filed another response in support of the motion.[5] The Court held an evidentiary hearing and argument on Plaintiff's Motion on August 23, 2012. Plaintiff appeared

---

[1] Dkt. No. 41.

[2] Dkt. No. 47.

[3] Dkt. No. 51.

[4] Dkt. No. 56.

[5] Dkt. No. 59.

by counsel Garry G. Geffert, Esq. and Gregg C. Greenberg, Esq. Defendant appeared by counsel David A. Camilletti, Esq. and Matthew J. Hoffer, Esq. The hearing was conducted telephonically.

## I. INTRODUCTION

### *A. Background*

This case, and Plaintiff's companion case against Divas, LLC,[6] are identical in nature. The claims arise out of Plaintiff's employment as an exotic dancer at the Defendant clubs. In her complaint, Plaintiff alleges that Defendants have violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. (FLSA), and the West Virginia Wage Payment and Collection Act, W. Va. Code § 21-5-1, *et seq*. (WPCA), because during the course of her employment she was not payed any wages for the work she performed. Instead, Plaintiff claims that she was required to pay Defendants to work at its clubs, including charges for each shift, for private dances, and penalties for arriving late to work.

The defendants have asserted a number of affirmative defenses and counterclaims in this action, and claim that the dancers were employed as independent contractors.[7] Plaintiff now seeks to compel Defendants to identify former dancers that worked at its clubs, so she can send notice to those dancers of their ability to opt-in to the present dispute as a collective action under the FLSA.

### *B. The Motion*

Plaintiff Nesselrodte's *Motion to Facilitate Identification and Notification of Parties Similarly Situated*.

---

[6] Civ. No. 3:11-cv-92.

*C. Decision*

Plaintiff Nesselrodte's Motion is **GRANTED**.

## II. THE MOTION TO FACILITATE

*A. Contentions of the Parties*

Inherent in her request to facilitate identification of exotic dancers similarly situated to herself, and to approve a notice to those dancers, Plaintiff asks this Court to conditionally certify her case as a collective action under 29 U.S.C. § 216(b) of the FLSA. As a result of this conditional certification, Plaintiff further asks this Court to enter an order compelling the defendants to produce the names and personal information of all exotic dancers that have worked for the Defendant clubs since October 31, 2008, and to approve its "Important Notice" to the potential opt-in plaintiffs. In support of her burden to conditionally certify this as a collective action under the FLSA, Ms. Nesselrodte declares, in relevant portion, the following:

> 3. I was employed by the defendants at the Underground from December 29, 2006 to May 2009, full-time.
>
> 4. Initially I worked the day shift on Monday through Thursday from 11:30 a.m. to 7:00 p.m. Then I worked double shifts on Friday and Saturday, from 11:30 a.m. until about 2:30 a.m. Sometime in the summer of 2008 the manager, Jason, said I no longer had to work on Friday nights. But I still worked the day shift on Friday. A few months later Jason said I only had to work on the day shifts. In 2009, I stopped working on Mondays, and just worked the day shift on Tuesday through Saturday.
>
> 5. I also worked at the Underground from January 2010 to April 2010. I worked the day shift two days each week, and then worked on Saturday nights, from 7:00 p.m. until close, usually about 2:30 a.m.
>
> . . .

7. The defendants set the times for the beginning and the end of shifts for me and for other exotic dancers.

8. If you did not work on a Monday or Tuesday, defendants would not let you work on weekends.

9. At all times while I was employed by the defendants at the Underground, the defendants set my rate and method of pay.

10. At all times while I was employed by the defendants, the defendants set the rate and method of pay for all the exotic dancers who worked for them.

11. When I worked for the defendants at the Underground I was required to pay them $50.00 to $150.00 for each shift I worked. This amount was set by the defendants' manager.

12. Other dancers had to pay defendants $10 each shift they worked.

13. One time, Jason, a manager, heard I had danced at another club on my day off. He would not let me work for two days after that, because I had danced at the other club.

14. If I had to leave work early, defendants' manager, Jason, fined me $25.00 to $50.00.

15. If I, or any other dancer, was late for a shift, defendants fined us $20.00.

16. Defendants set the order for the[sic] me and the other dancers to appear on the stage

17. Defendants fined dancers if they were not on stage on time.

18. Defendants required me and the other dancers to take our top off during the first song when we were on stage, and bottoms off during the second song. At first, if no customers were in the club, we did not have to disrobe on stage. Then defendants changed the rule and required us to take off our tops during the first song, even if no customers were there.

19. Defendants set the amounts customers were to tip dancers for the private dances and the champagne dances. Defendant had

signs up saying that if a customer tipped a dancer more the $30.00 for a private dance or $100.00 for a champagne dance, the dancer had to tell the manager.

20. At all times throughout my employment with defendants, defendants said that I and all of the other dancers were independent contractors and not employees of the club.

21. When I worked as a dancer for defendants at the Underground, defendants provided the necessary facilities and equipment so that I could perform my job as an exotic dancer.

22. Throughout the time I worked for defendants at the Underground as an exotic dancer, defendants had the ability to fine me, adjust my schedule, and impose discipline on me.

23. Throughout the time I worked for defendants at the Underground as an exotic dancer, defendants had the ability to fine other dancers, adjust their schedules, and impose discipline on them.

24. Throughout the time I worked for defendants at the Underground as an exotic dancer, defendants supervised my work duties and performance.

25. Throughout the time I worked for defendants at the Underground as an exotic dancer, defendants supervised the work duties of other exotic dancers and performance.

26. Throughout the time I worked for defendants at the Underground, defendants never paid me any wages for the work I performed.

27. Throughout the time I worked for defendants at the Underground, defendants never paid any exotic dancers any wages for the work they performed.

28. I have personal knowledge that during the time I worked for defendants at the Underground there were about one hundred other exotic dancers who worked there at one time or another.

29. I have personal knowledge that other exotic dancers employed by defendants at the Underground have not joined

> this lawsuit either because they do not know about their rights to minimum wage compensation, or they do not know about this lawsuit, or they are afraid that if they join this lawsuit, defendants will retaliate against them, or they will lose their employment with defendants.

Dkt. No. 41-2.

Defendant contends that Plaintiff's motion falls short of the legal standard for conditional certification under the FLSA. Moreover, Defendant contends that since September 4, 2011, dancers at its clubs perform according to an "Entertainment Agreement," which binds those dancers to arbitrate any claims against the clubs. Finally, the defendants argue that entertainers who have performed at the clubs since April 2012 have been given the option to be employees under an FLSA tipped employee structure, or to remain on the current "independent contractor" structure.

## B. Discussion

In his March 7, 2012 order, Chief Judge Bailey granted a motion identical to the instant one, which conditionally certified, under the FLSA, claims from a former exotic dancer against the clubs where she worked.[8] After reviewing the arguments, the Court find that Judge Bailey's Order is dispositive of the instant motion. The Court will, however, address Defendant's concerns about certification in this case frustrating the purpose of the Federal Arbitration Act (FAA), a matter that was not dealt with in Chief Judge Bailey's order.

This Court is fully aware of the "clear federal directive in support of arbitration," and that the FAA requires a court "to stay any suit or proceeding pending arbitration of any issue referable to arbitration under an agreement in writing for such arbitration." *Adkins v. Labor Ready, Inc*, 303 F.3d 496, 500 (4th Cir. 2002) (citing 9 U.S.C. § 3). Federal courts have even compelled

---

[8] Ruffin v. Ent'mt of the E. Panhandle, Inc., d/b/a The Legz Clubs, Civ. No. 3:11-cv-19, 2012 U.S. Dist. LEXIS 29835 (N.D.W. Va. March 7, 2012).

arbitration, when a collective action was sought, for "implied-in-fact" arbitration agreements where a written agreement could not be produced but it was the practice of the organization to have employees sign such an agreement. *See e.g. Johnson v. Long John Silver's Rests., Inc.*, 414 F.3d 583 (6th Cir. 2005)(refusing to certify a collective action in favor of an arbitral forum).

Here, however, Defendant's own admission shows that dancers were not presented with these agreements that included an arbitration clause until September 4, 2011. This includes only a portion of the potential opt-in class under FLSA 216(b), which Plaintiffs request dating back to October 31, 2008. Moreover, Defendants in this action have not yet filed any motion to compel arbitration. At this point in the litigation, the FAA does not forbid the Court from granting *conditional* certification for a collective action class under the FLSA based upon a relatively small group of the potential class signing an agreement to arbitrate any claims arising against the employer.

### III. DECISION

Accordingly, this Court hereby **GRANTS** conditional certification for a class defined as follows:

> All former exotic dancers who worked for any of the defendant clubs in West Virginia within the three years prior to June 28, 2012 and were not paid at an hourly rate at least equal to the federal minimum wage.

As a result of this conditional certification, this Court further **ORDERS** Defendants to produce within **14 DAYS** of the date of this Order, the full names, the last known work and home addresses, the last known phone numbers, and the last known e-mail addresses of each and every individual who worked for the defendants as an exotic dancer in the Defendant's club at any time from June 28, 2009, to the present.

Finally, after reviewing the Proposed Important Notice submitted by Plaintiff the Court hereby **APPROVES** the Notice.[9]

Filing of objections does not stay this Order.

Any party may, within fourteen [14] days of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable

**IT IS SO ORDERED**.

DATED: September 25, 2012 /s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE

---

[9] Plaintiff's Notice is identical to the one approved and signed by Chief Judge Bailey on April 25, 2012. *See* Ruffin v. Ent'mt of the E. Panhandle, Inc., d/b/a The Legz Clubs, Civ. No. 3:11-cv-19, Dkt. No. 80.